UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HERSCHEL W. VICK EL,

   Plaintiff,

v.                                    Case No. 15-CV-03355-GLR

OFFICER EDWARD CARMEAN, ET AL.,

   Defendants.

\* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' RENEWED MOTION TO DISMISS OR,
ALTERNATIVELY, FOR SUMMARY JUDGMENT[1]**

Officer Edward Carmean and Chief Arnold[2], Defendants, by their undersigned counsel, pursuant to Local Rule 105.1, submit this Memorandum in support of their Renewed Motion to Dismiss or, alternatively, for Summary Judgment.

**I.    Introduction**

On November 2, 2015, Herschel W. Vick El ("Vick") filed suit, *pro se,* against Officer Edward Carmean ("Officer Carmean") and Chief Arnold Downing ("Chief Downing"). The Court has interpreted the Complaint as alleging "excessive use of force during an arrest." (ECF 5, p. 1). Defendants were served via certified mail on June 17, 2016. (ECF No. 11).

On June 25, 2016, Officer Carmean and Chief Downing filed a Motion for Extension of Time, requesting that the deadline for them to respond to the Complaint be extended to August 26, 2016. (ECF

---

[1] The only argument raised by Defendants in their original motion that is not raised in this memorandum is the argument that Vick's claims are barred by the holding in *Heck v. Humphrey,* 512 U.S. 477 (1994).

[2] "Chief Arnold's" proper name is Arnold Downing. He has been the Chief of Police in the Town of Berlin for over fifteen (15) years.

No. 12). On August 26, 2016, they sought an additional extension of time, up through and including September 2, 2016 to respond to the Complaint. (ECF No. 13). The Court granted both motions on September 1, 2016. (ECF No. 14).

Officer Carmean and Chief Downing moved to dismiss the claims against them or, alternatively, for summary judgment. (ECF No. 15). On March 16, 2017, the Court entered summary judgment on behalf of Chief Dowling Vick because failed to demonstrate any facts to support the allegation that Chief Dowling "had actual knowledge that Carmean had a propensity to use excessive force against others and had otherwise abused his authority as a police officer. (ECF No. 20, p. 6). As to Officer Carmean, the Court found that because he had been found guilty of resisting arrest, his excessive force claim was barred by the holding in *Heck v. Humphrey,* 512 U.S. 477 (1994). Vick noted an appeal to the Fourth Circuit.

The Fourth Circuit ultimately reversed and remanded this matter to the Court because Vick's conviction for resisting arrest had been overturned on appeal. This matter was subsequently stayed until the criminal charges were resolved. When the criminal matter was subsequently resolved, the resisting arrest charge was placed on the stet docket. Because the resisting arrest charge was not removed from the stet docket, this Court lifted the stay in this matter.

When the stay was lifted, the Court issued an order requiring Vick to amend his complaint or advise the Court that he intends to proceed with his claim as stated in his original complaint. (ECF No. 33). The Court further ordered the Defendants to respond to the controlling pleading by July 27, 2020. (ECF No. 33).[3]

---

[3] Defendants have filed a Motion *Nunc Pro Tunc* to File Their Renewed Motion to Dismiss or, alternatively, for Summary Judgment.

Vick subsequently informed the Court that he would like to proceed with the original complaint. (ECF No. 34). In light of Vick's decision, Officer Carmean and Chief Arnold renew their Motion to Dismiss or, alternatively, for Summary Judgment. As to Chief Arnold, the reversal of Vick's conviction for resisting arrest does not change the fact that the Complaint fails to state a claim against him. Regarding Officer Carmean, when the Court entered its original order, it did not rule on Officer Carmean's arguments that his use of force was reasonable or that he was entitled to qualified immunity.

## II. Motions to Dismiss and for Summary Judgment

To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Twombly*, 555 U.S. at 556. In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

"When matters outside the pleading are presented to and not excluded by the court, the [12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998) (quoting Fed.R.Civ.P. 12(b)) (internal quotation marks omitted). Accordingly, under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). Once a motion for summary judgment is properly made

and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48.

A "material fact" is a fact that might affect the outcome of a party's case. *Anderson,* at 248; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001) (citing *Hooven–Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir.2001)).  Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson,* at 248; *accord Hooven–Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).

Based upon the application of these principles, Officer Carmean and Chief Downing respectfully submit that they are entitled to dismissal of the claims against them or, alternatively, for summary judgment.

### III.  Material Facts Not Genuinely in Dispute

#### A.  The Warrant for Plaintiff's Arrest

A bench warrant was issued by the District Court for Worcester County for "Herschel Brown"[4] on April 1, 2002 based upon his failure to appear in court.  (Exhibit 1).  That warrant was still active in August, 2014.  (Exhibit 1).

---

[4] Herschel Brown apparently now refers to himself as Herschel W. Vick El.  Defendants are not aware of any legal proceedings in which Herschel Brown's name was legally changed to Herschel W. Vick El.  That said, in an attempt to avoid confusion and out of respect for his chosen moniker, Defendants will refer to the Plaintiff as "Vick".

### B.    The First Encounter Between Plaintiff and Officer Carmean

On August 14, 2014, at approximately 12:37 a.m., Officer Carmean encountered Vick in the area of Henry Park, located at 117 Flower Street, Berlin, Maryland.  (Exhibit 2, ¶ 2; Exhibit 3; Exhibit 4).  There is no trespassing in Henry Park after dark.  (Exhibit 2, ¶ 2).  During the encounter, Vick, who appeared agitated, identified himself not as himself, but as David Tang, date of birth July 16, 1955.  At that time, Vick claimed to be from North Carolina.  (Exhibit 2, ¶ 2; Exhibit 3; Exhibit 4).   Officer Carmean had not previously interacted with Vick and took him at his word when he identified himself as David Tang.  (Exhibit 2, ¶ 2; Exhibit 3; Exhibit 4).   A warrant check on David Tang came up negative and Officer Carmean let Vick go with a trespass warning.  (Exhibit 2, ¶ 2; Exhibit 3; Exhibit 4).

### C.    The Second Encounter Between Plaintiff and Officer Carmean

On August 29, 2014, at approximately 7:58 p.m., Officer Carmean encountered Vick again in the area of Henry Park.  (Exhibit 2, ¶ 3; Exhibit 3; Exhibit 4).  During the encounter, Officer Carmean asked Vick for his name.  (Exhibit 2, ¶ 3; Exhibit 3; Exhibit 4).  Vick responded, "What the fuck you need my name for?  I remember you."  (Exhibit 2, ¶ 3; Exhibit 3; Exhibit 4).  Officer Carmean then asked Vick if he was, indeed, David Tang.  (Exhibit 2, ¶ 3; Exhibit 3; Exhibit 4).  Vick responded, "Man, I'm not telling you my motherfucking name!"  (Exhibit 2, ¶ 3; Exhibit 3; Exhibit 4).  Because he now had reason to believe that Vick had given him a false name during their previous encounter, Officer Carmean then asked Vick if he was, in fact, Herschel Brown.  (Exhibit 2, ¶ 3; Exhibit 3; Exhibit 4).  Vick said, "Get the fuck out of here!" and began to walk away.  (Exhibit 2, ¶ 3; Exhibit 3; Exhibit 4).  Officer Carmean then asked Vick to stop and produce his identification.  (Exhibit 2, ¶ 3; Exhibit 3; Exhibit 4).  Vick refused, stating, "I don't have that shit."  (Exhibit 2, ¶ 3; Exhibit 3; Exhibit 4).

Officer Carmean then informed Vick that there was a warrant out of his arrest and that he was, in fact, now under arrest.  (Exhibit 2, ¶ 4; Exhibit 3; Exhibit 4).  Officer Carmean then asked Vick to turn

5

around and place his hands behind his back. (Exhibit 2, ¶ 4; Exhibit 3; Exhibit 4). Vick attempted to walk around Officer Carmean and bumped his left shoulder against Officer Carmean's shoulder. (Exhibit 2, ¶ 4; Exhibit 3; Exhibit 4). Officer Carmean then took hold of Vick and placed him against the wall of 115 Flower Street. (Exhibit 2, ¶ 4; Exhibit 3; Exhibit 4). He then ordered Vick, who was facing the wall and holding a cigarette, to drop the cigarette and put his hands behind his back. (Exhibit 2, ¶ 4; Exhibit 3; Exhibit 4). The presence of the cigarette was a safety concern to Officer Carmean who believed Vick may try to burn him with it. (Exhibit 2, ¶ 4). Vick refused to drop the cigarette and instead made numerous attempts to push off the wall and turn around to face Officer Carmean. (Exhibit 2, ¶ 4; Exhibit 3; Exhibit 4).

Based upon Vick's lack of cooperation, Officer Carmean requested backup. (Exhibit 2, ¶ 5; Exhibit 3; Exhibit 4). Officer Carmean then knocked the cigarette out of Vick's hand. (Exhibit 2, ¶ 5; Exhibit 3; Exhibit 4). Vick yelled numerous times, "Get the fuck off me!" and "No, I'm not giving you my hands!" (Exhibit 2, ¶ 5; Exhibit 3; Exhibit 4). Vick also stated, "Do what you got to do! Get the fuck off me!" (Exhibit 2, ¶ 5; Exhibit 3; Exhibit 4). A struggled ensued. (Exhibit 2, ¶ 5; Exhibit 3; Exhibit 4). During the struggle, Vick struck Officer Carmean, with his elbow, in the chest. (Exhibit 2, ¶ 5; Exhibit 3; Exhibit 4). Officer Carmean, who was standing behind Vick, then hooked his arm across Vick's torso, from left rib cage to this right shoulder, and took Vick to the ground. (Exhibit 2, ¶ 5; Exhibit 3; Exhibit 4). In doing so, Officer Carmean landed on top of Vick. (Exhibit 2, ¶ 5; Exhibit 3; Exhibit 4).

After being taken to the ground, Vick put his hands underneath himself. (Exhibit 2, ¶ 6; Exhibit 3; Exhibit 4). Officer Carmean gave Vick numerous orders to put his hands to the side. (Exhibit 2, ¶ 6; Exhibit 3; Exhibit 4). Vick refused to comply. (Exhibit 2, ¶ 7; Exhibit 3; Exhibit 4). Officer Carmean then radioed again for backup. (Exhibit 2, ¶ 6; Exhibit 3; Exhibit 4).

Based upon Vick's continued refusal to comply with his orders, Officer Carmean used an open hand technique, a defensive tactic, and struck Vick once on the right side of his face/head area in an attempt to gain compliance. (Exhibit 2, ¶ 7; Exhibit 3; Exhibit 4; Exhibit 5). He then gave him additional instructions to put his hands behind his back. (Exhibit 2, ¶ 7; Exhibit 3; Exhibit 4). Vick continued in his refusal to obey Officer Carmean's commands. (Exhibit 2, ¶ 7; Exhibit 3; Exhibit 4; Exhibit 5). Officer Carmean then struck Vick a second time on the right side of his face/head area in further attempt to gain compliance. (Exhibit 2, ¶ 7; Exhibit 3; Exhibit 4; Exhibit 5). After the second strike, Vick stopped resisting and released his hands. (Exhibit 2, ¶ 7; Exhibit 3; Exhibit 4). Officer Carmean was then able to place Vick in handcuffs. (Exhibit 2, ¶ 7; Exhibit 3; Exhibit 4). Officer Carmean never deployed his Taser during the incident in question. (Exhibit 2, ¶ 7; Exhibit 3; Exhibit 4).

After Vick was handcuffed, Senior Officer Merle Bragg ("Officer Bragg") and Senior Officer Jessica Collins both arrived, separately, on the scene. (Exhibit 2, ¶ 8; Exhibit 3). While at the scene, Officer Bragg recovered Officer Carmean's departmentally issued Taser, which was still in its holster, which had been ripped from Officer Carmean's equipment belt during his encounter with Vick. (Exhibit 2, ¶ 8; Exhibit 3).[5]

After Vick was handcuffed, Officer Carmean observed that Vick had a cut under his right eye and some swelling near his eye. (Exhibit 2, ¶ 10; Exhibit 3; Exhibit 4). Based upon these observations, Officer Carmean radioed for EMS to come to the scene to provide treatment. (Exhibit 2, ¶ 10; Exhibit 3; Exhibit 4). Vick was transported from the scene to Atlantic General Hospital. (Exhibit 2, ¶ 10; Exhibit

---

[5] The Taser holster had been secured to Officer Carmean's equipment belt by plastic retaining clips. (Exhibit 2, ¶ 9; Exhibit 3). The retaining clips are secured to the Taser holster with screws. (Exhibit 2, ¶ 9; Exhibit 3). During the incident in question, the screws securing the clips to the Taser holster broke, causing the holster, with the Taser still in it, to fall from Officer Carmean's equipment belt. (Exhibit 2, ¶ 9; Exhibit 3).

3; Exhibit 4). Officer Carmean followed the ambulance to the hospital. (Exhibit 2, ¶ 10; Exhibit 3; Exhibit 4).

While at the hospital, Officer Carmean searched Vick. (Exhibit 2, ¶ 11; Exhibit 3; Exhibit 4). The identification carried by Vick confirmed his identity, as well as one of the four dates of birth associated with the name Herschel Brown. (Exhibit 2, ¶ 11; Exhibit 3; Exhibit 4). The Social Security card carried by Vick also matched one of the three social security numbers associated with the name Herschel Brown. (Exhibit 2, ¶ 11; Exhibit 3; Exhibit 4). Officer Carmean also found cocaine and heroin in Vick's possession. (Exhibit 2, ¶ 11; Exhibit 3; Exhibit 4). Photographs were taken of Vick while he was at the hospital. (Exhibit 2, ¶ 11; Exhibit 6).

Vick was treated at the hospital for facial contusions. (Exhibit 2, ¶ 12; Exhibit 3; Exhibit 4). Upon his release, Officer Carmean transported Vick to the Berlin Police Department for processing. (Exhibit 2, ¶ 12; Exhibit 3; Exhibit 4).

### D. The Prosecution and Conviction of Plaintiff

Based upon the incident in question, Vick was charged with: Second Degree Assault; (2) Possession of a Controlled Dangerous Substance – Heroin; (3) Possession of a Controlled Dangerous Substance – Cocaine; (4) Resisting Arrest; and (5) Making a False Statement to Officer Carmean.[6] (Exhibit 2, ¶ 13; Exhibit 7).

A jury trial was held on August 6, 2015. (Exhibit 8). Vick was acquitted on the Second-Degree Assault charge, but was found guilty on both possession charges, as well as the charge of Resisting Arrest. (Exhibit 8). On October 6, 2015, Vick was sentenced to one year on each of the convictions, to be served concurrently. (Exhibit 8).

---

[6] The charge of Making a False Statement was entered *nolle prosequi*. (Exhibit 4).

Vick's conviction was later reversed and remanded for further proceedings. (Exhibit 8). He subsequently pleaded guilty in February 2018 to various charges, but the resisting arrest charge was placed on the stet docket. (Exhibit 8). It was never removed from the stet docked. (Exhibit 8).

**IV.    Argument**

    **A.    The Complaint Fails to State a Claim Against Chief Downing**

Chief Downing moves to dismiss the Fourth Amendment claim against him. Under 42 U.S.C. § 1983, liability is imposed on "any person who shall subject, or cause to be subjected, any person ... to the deprivation of any rights...." 42 U.S.C. § 1983. Accordingly, the statute requires a showing of personal fault, whether based upon the defendant's own conduct or another's conduct in executing the defendant's policies or customs. *See Monell v. New York City Dep't of Social Servs*., 98 S. Ct. 2018, 2035-37 (1978); *West v. Atkins*, 815 F.2d 993, 996 (4th Cir. 1987), *rev'd on other grounds*, 487 U.S. 42 (1988) (no allegation of personal involvement relevant to the claimed deprivation); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)(in order for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights ...") (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md. 1971), *aff'd*, 451 F.2d 1011 (4th Cir. 1971)). Moreover, an individual cannot be held liable under 42 U.S.C. § 1983 under a theory of *respondeat superior*. *See Monell*, 436 U.S. at 690; *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no *respondeat superior* liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no *respondeat superior* liability in a *Bivens* suit).

In *Shaw v. Stroud,* 13 F.3d 791 (4th Cir. 1994), the court held that supervisory liability may attached under § 1983 if a plaintiff can prove: (1) "the supervisor had actual or constructive knowledge that his subordinate engaged in conduct that posed 'a pervasive and unreasonable risk' of

constitutional injury to citizens like the plaintiff;" (2) "the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices;" and that (3) "there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw,* 13 F.3d at 799. (citations omitted).

A close examination of the Complaint reveals that it fails to state any claim against Chief Downing.  The only place his name appears is in the case caption.  The Complaint is wholly devoid of any allegation that Chief Downing was present at the scene of the incident in question, that he ever used any force against Vick, or that he had actual or constructive knowledge that Officer Carmean engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like Vick.  Absent any such allegation, Chief Downing cannot be held liable to Vick and the claim against him should be dismissed with prejudice.

### B.     Absence of Fourth Amendment Violation by Officer Carmean

Officer Carmean moves for summary judgment as to the Fourth Amendment claim against him. "The right to make an arrest carries with it the right to use the amount of force that a reasonable officer would think necessary to take the person being arrested into custody." *Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir. 1988) (citation omitted).  The Fourth Amendment, however, "prohibits police officers from using force that is 'excessive' or not 'reasonable' in the course of making an arrest." *Graham v. Connor,* 490 U.S. 386, 395 (1989).

Whether a law enforcement officer used excessive force depends on the "objective reasonableness" of the action in question. *Graham*, 490 U.S. at 388.  The force used by an officer is not excessive if the officer's "actions are 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Graham,* at 397; *Schultz v.*

*Braga*, 455 F.3d 470, 477 (4th Cir. 2006).  Relevant "facts and circumstances include 'the severity of the crime at issue,' whether the 'suspect poses an immediate threat to the safety of the officers or others,' and whether the suspect 'is actively resisting arrest or attempting to evade arrest by flight,' " as well as "[t]he extent of the plaintiff's injury." *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003) (quoting *Graham*, at 396; citing *Rowland v. Perry,* 41 F.3d 167, 174 (4th Cir. 1994); referring to factors as "*Graham* factors").

The reasonableness of the force used is to "be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham,* at 396–97.  Thus, " '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment."  *Id.*  (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)) (internal citation omitted).

The existence of the warrant gave Officer Carmean the right to arrest Vick.  The affidavit of Officer Carmean establishes that Vick resisted a lawful arrest and that his use of force was reasonable under the circumstances.  Vick refused lawful police commands and, at the outset, posed a threat to Officer Carmean due to the presence of a lit cigarette in his hand.  Vick's refusal to comply with lawful commands resulted in the application of force necessary to effectuate an arrest.  Pushing Vick into the wall when he refused lawful commands, taking Vick to the ground after he pushed off the wall and struck Officer Carmean, and then striking Vick twice when he refused to give up his hands cannot be considered unreasonable under the circumstances.  Consequently, Officer Carmean is entitled to summary judgment on Vick's excessive force claim.

### C. Existence of Qualified Immunity

"The doctrine of qualified immunity 'balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.' " *Meyers v. Baltimore County*, 713 F.3d 723, 730–31 (4th Cir. 2013) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Whether a defendant is entitled to qualified immunity is a question of law for the court. *Knussman v. Maryland*, 272 F.3d 625, 634 (4th Cir. 2001). The Court's determination is driven by two separate inquiries. First, the Court must decide "whether the facts alleged or shown, taken in the light most favorable to the plaintiff, establish that the police officer's actions violated a constitutional right." Next, the Court must determine "whether the right at issue was 'clearly established' at the time of the officer's conduct." *Meyers,* 713 F.3d at 731 (quoting, *Saucier v. Katz,* 533 U.S. 194, 201 (2001)); *see also Pearson*, 555 U.S. at 236 (courts are not required to conduct the analysis in sequence established in *Saucier*). Accordingly, even if a plaintiff proves that an officer violated certain constitutional rights, that officer may still be entitled to qualified immunity "if a reasonable person in the officer's position 'could have failed to appreciate that his conduct would violate those rights.' " *Meyers*, 713 F.3d at 731 (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991)).

In the instant case, the right under the Fourth Amendment to be free from excessive force is clearly established. However, the contours of the right do not prohibit a police officer making an arrest on outstanding bench warrant from using a modicum of force to restrain an individual who is refusing to obey lawful police orders and physically resisting arrest. Under these circumstances, the circumstances encountered by Officer Carmean, no reasonable person in his place would have appreciated that these actions violated Vick's Fourth Amendment rights. Thus, at a minimum, Officer Carmean is entitled to qualified immunity.

### D. Conclusion

For these reasons, the Renewed Motion to Dismiss or, alternatively, for Summary Judgment filed by Officer Carmean and Chief Dowling must and should be granted.

_____/s/_____
Matthew D. Peter
Federal Bar No.  26351
mpeter@lgit.org
7225 Parkway Drive
Hanover, Maryland  21076
Office (443) 561-1700
Facsimile (443) 561-1701
Counsel for Defendants

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of November 2020, the foregoing Memorandum in Support of Defendants' Renewed Motion for Summary Judgment was filed electronically, with the Court, via ECF, and was sent via First Class, U.S. Mail, postage prepaid to:  Herschel W. Vick El, 16050 Flower Street, Berlin, Maryland  21811.

_____/s/_____
Matthew D. Peter