1  standby attorney from the Public Defender's Office and stayed
2  in here and was available to him if he needed it.  Probably
3  she should be here now.
4      MR. OGLESBY:  I'm going to check courtroom number
5  one for Mr. Turnbull.
6      JUDGE CATHELL:  I was just told that he's sitting
7  at counsel table in courtroom number one.
8      MR. OGLESBY:  Mr. Turnbull is?
9      JUDGE CATHELL:  No.  Mr. Anderson is.  I need the
10 female attorney that was here with him.  He had his standby
11 attorney.
12     MR. TURNBULL:  He had Kristina as his standby
13 attorney.  I'm not sure if she's here for the sentencing.  I
14 haven't seen her this morning.  It was my understanding in
15 speaking with her that she didn't believe she was going to be
16 necessary for the sentencing this morning because he had fired
17 her at his trial or did not want her help.
18     JUDGE CATHELL:  But he agreed to have her stand
19 by.
20     MR. TURNBULL:  Yes.
21     JUDGE CATHELL:  What I want to do with Mr. Oglesby
22 here is to put on the record something.
23     On the date of his trial when we left here in that
24 afternoon it was about 90, 95 degrees.  And a very dark
25 thunder cloud was hovering over Snow Hill.



1     'As I left here to go up north on 113, I saw an old

2  man walking from Snow Hill to Berlin, and it was him dressed

3  in a three-piece suit.  My heart wouldn't let me leave an old

4  man at the mercy of an 18-, 19-mile walk in the rain and/or

5  heat.  I stopped and gave him a ride.  I told him we can't

6  talk about your case, and we never talked about the case.  But

7  I did give him a ride to Berlin.  I thought you all ought to

8  know it.

9          And I knew -- the house he lived in was familiar to

10 me.  It was at one time associated with the Briddell family in

11 Berlin.  At least one branch of the Briddell family, if not

12 all of the Briddell family, were highly respected people back

13 when I was young.

14         Anyway, I wanted you all to know that I gave him a

15 ride to Berlin.  It's not going to influence my sentencing.

16 I'm just going to go ahead and do what I think is right under

17 all the circumstances.

18         MR. TURNBULL:  Yes, Your Honor.

19         JUDGE CATHELL:  Mr. Vick, we can proceed with your

20 sentencing now, or if you want I'll postpone it and send

21 somebody out for that same attorney that I made sit by in case

22 you needed her.  I don't recall that you used her.  But you

23 can proceed without her if that's what you want to do.

24         MR. VICK:  Your Honor, I'll go ahead and proceed

25 without her and place myself on the mercy of the Court.



1   If you'll hand that back to the bailiff.  Thank you.
2               Mr. State's Attorney, I'll hear anything you have to
3   say.  My understanding was it was personal use cocaine,
4   personal use heroin.  He wasn't charged with any distribution
5   charges.  I acquitted him I think of second degree assault.
6   He was found guilty by the jury of the two drug-related
7   offenses and resisting arrest.  And this was a case where a
8   police officer about twice his size went to arrest him and
9   admitted on the witness stand that he slugged him twice.  This
10  is that case.
11              MR. TURNBULL:  Yes, Your Honor.  I would take -- I
12  take exception to slugging.  I think he said --
13              JUDGE CATHELL:  That's what the police officer
14  said.
15              MR. TURNBULL:  I understand, Your Honor.
16              JUDGE CATHELL:  He said, I slugged him twice.
17              MR. TURNBULL:  He said he did strike him twice.
18              JUDGE CATHELL:  And there are pictures in the file
19  indicating that he was struck in the head.
20              MR. TURNBULL:  That's correct, in order for him to
21  comply with the --
22              JUDGE CATHELL:  I understand.
23              MR. TURNBULL:  -- with the instructions to give
24  him his hands and stop reaching towards his waistband.
25              Your Honor, it was a very tough case.  Mr. Vick is

1    Q    Did there come a time when you and Mr. Vick both
2  went to the ground?
3    A    Yes.
4    Q    Can you tell the jury how that occurred?
5    A    While against the wall struggling for his hands to
6  be put behind his back, there are in the front of his body, he
7  still has the cigarette. I brushed the cigarette out of his
8  hands still trying to get compliance from him. And like I
9  said, I made the radio call. The fight had ensued a little
10 bit before that. I had ended up head tossing him. Where I
11 was behind him, the wall, him and me, I ended up head tossing
12 him. I had hooked up under his body to control his arms to
13 separate them so he can't -- I don't know what he was going
14 for. I have no idea. But I know the hands weren't behind him
15 where I needed them, and it was not safe for either one of us.
16       I had hooked my hand across his body diagonally from
17 left rib to right shoulder, just turned in, head tossed him in
18 a way that I would be on top of him. He was not free to go.
19 I can't let this man go, the defendant, at this point. And
20 there's no cooperation.
21       We get to the ground, his hands are still under him.
22 He's digging in his waistline, his front areas. I have no
23 access to this. Now it's on the ground. I definitely can't
24 see this. I say, give me your hands. Put your hands out to
25 the side. Give me your hands. These are standard commands

1           JUDGE CATHELL: It has to be physical actions of
2  some kind.
3           MR. TURNBULL: I believe some kind of physical
4  action.
5           JUDGE CATHELL: The last question has, we are
6  wondering if a verbal denial could be characterized as
7  resisting arrest.
8           If I answer this merely by saying, no, does that
9  satisfy everybody? I know -- Ms. Watkowski, is it acceptable
10 to you? Mr. Vick, is that acceptable to you?
11          MR. VICK: Yes, sir. I wouldn't know. Whatever.
12          JUDGE CATHELL: I'm going to answer this question.
13 We are wondering if a verbal denial could be characterized as
14 resisting arrest. I'm going to answer that by saying no. And
15 I'm writing it on the note and sending the note back in to
16 them with that no and over my signature. Any other
17 information you need, ma'am?
18          MS. WATKOWSKI: You covered it. Thank you.
19          JUDGE CATHELL: When you hand this note back to
20 them, tell them they have to save this note and give it back
21 to you. Show it to Mr. Vick. Show it to Mr. Vick,
22 Ms. Watkowski and Mr. Turnbull. That's what I'll send back.
23          MS. WATKOWSKI: Your Honor, it says I tried to
24 write it down, not work it down.
25          JUDGE CATHELL: Okay. Make sure you tell them to

1. including the conversations, if any, between the police and
2. the defendant, whether the defendant was advised of his
3. constitutional right, the length of time that the defendant
4. was questioned, who was present, the mental and physical
5. condition of the defendant; six, whether the defendant was
6. subjected to force or threat of force by the police, the age,
7. background, experience, education, character and intelligence
8. of the defendant, and any other circumstances surrounding the
9. taking of any statement.
10. If you find beyond a reasonable doubt that the
11. statement was voluntary, give it such weight as you believe it
12. deserves. If you do not find beyond a reasonable doubt that a
13. statement was voluntary, you must disregard it.
14. You've heard testimony of the defendant that he's a
15. veteran of the Vietnam War and has been awarded two Purple
16. Hearts and a Bronze Star. That could be evidence of good
17. character. It is not itself a defense to the crime, but you
18. could consider it with all the other evidence in the case.
19. You may decide that it is unlikely that a person possessing
20. those type of character traits would have committed either or
21. all of the crimes charged.
22. The defendant has been charged, as I said, with the
23. offense of resisting arrest, but he's also been charged with
24. simple possession of heroin and simple possession of cocaine.
25. Both of these substances are controlled dangerous substances.

1         In order to convict the defendant of possession of
2 either of those substances, the State must prove that the
3 defendant knowingly possessed the substance, that the
4 defendant knew the general character or illicit nature of the
5 substances, and that the substance was heroin in respect to
6 one count and/or cocaine in respect to another count.
7 Possession means having control over a thing whether actual or
8 indirect.
9         In addition to the charges of possession of heroin
10 in the separate count, charge of possession of cocaine, the
11 defendant is also charged with resisting -- what we call
12 resisting arrest.
13         The defendant is charged with the crime of resisting
14 arrest. In order to convict the defendant of resisting
15 arrest, the State must prove; one, that a law enforcement
16 officer attempted to arrest the defendant; two, that the
17 defendant knew that a law enforcement officer was attempting
18 to arrest him; and three, that the defendant intentionally
19 refused to submit to the arrest and/or resisted the arrest by
20 force.
21         If you'll take a copy of the verdict worksheet to
22 the jury. Somebody take it over to him, please. Give it to
23 the foreman which is the young gentleman in the glasses that
24 just raised his hand.
25         As you can see, sir, it's pretty self-explanatory,