IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HERSCHEL W. VICK-EL, *
a/k/a Herschel Walter Brown,
    *
    Plaintiff,

v. * Civil Action No. GLR-15-3355

OFFICER EDWARD CARMEAN, et al., *

    Defendants. *
        ***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Edward Carmean and Arnold Downing's renewed Motion to Dismiss for Failure to State a Claim, or, Alternatively, for Summary Judgment (ECF No. 36). The Motion is ripe for review, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons discussed below, the Motion will be denied in part and granted in part.

### I. BACKGROUND

**A. Factual Background**

Self-represented plaintiff Herschel W. Vick-El alleges in his verified Complaint[1] that he was subjected to excessive force, police brutality, and negligence incident to his arrest by Defendant Carmean on August 29, 2014. (ECF No. 1). Carmean first

---

[1] A verified complaint contains a sworn statement indicating its contents are true and therefore may be treated as an affidavit. See World Fuel Servs. Trading, DMCC v. Hebei Prince Shipping Co., Ltd., 783 F.3d 507, 516 (4th Cir. 2015). The Complaint in this action is a verified Complaint as it was filed under penalty of perjury. (Compl. at 3, ECF No. 1).

encountered Vick-El at approximately 12:37 a.m. on August 14, 2014. Carmean saw Vick-El in Henry Park in Berlin, Maryland, where there is no trespassing after dark. (See Carmean Aff. ¶ 2, ECF No. 36-4; Aug. 29, 2014 Incident Report ["Aug. 29 Rep."] at 2,[2] ECF No. 36-5; Statement Probable Cause ["Prob. Cause Stmt."] at 1, ECF No. 36-6). Vick-El appeared agitated and identified himself as David Tang from North Carolina. (Id.). Carmean checked for outstanding warrants on David Tang, found none, and let Vick-El go with a warning for trespassing. (Id.).

Carmean next encountered Vick-El on August 29, 2014. The Court summarized Vick-El's description of that encounter in its March 16, 2017 Memorandum Opinion:

> According to Vick-El, he was sitting on the steps of his mother's residence with James Biddle when Defendant Carmean, a Berlin, Maryland police officer, pulled into a local park in his police car. Vick-El and Biddle began leaving the yard when Carmean yelled for Vick-El to stop and asked him if he was David Tanig.[3] Vick-El responded no and Carmean asked him for his name. Vick-El informed Carmean that his name was [Hershel] Vick-El and that David Tanig was his brother. Carmean then pushed Vick-El up against a wall, commenced a body search, threw him to the ground, tased him, kneed[4] him in the back and punched him in the right eye. Vick-El never resisted Carmean.

---

[2] Citations to page numbers in the Complaint and the parties' exhibits refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

[3] Vick-El uses the name "David Tanig" in the Complaint, whereas Defendants use the name "David Tang." (See Compl. at 1–2, ECF No. 1; Carmean Aff. ¶¶ 2–3).

[4] Vick-El filed with his Opposition a copy of records from his hospital visit on August 30, 2014, for complaints of right upper rib pain. (See Hospital Rs. at 3, ECF No. 38-1). He told the medical provider that a police officer placed his knee on him during an altercation with the officer the previous night. (Id.).

(Mar. 16, 2017 Mem. Op. ["Mem. Op."] at 1, ECF No. 20 (citations omitted)). The Court summarized Carmean's account of the incident as follows:

> According to Carmean, on August 29, 2014, he encountered Vick-El near a local park in Berlin, Maryland at approximately at 7:59 p.m. Vick-El refused to provide his name to Carmean after he asked twice. Carmean informed Vick-El there was a warrant[5] for his arrest and asked Vick-El to turn around and place his hands behind his back. Vick-El refused and attempted to walk around Carmean, bumping Carmean with his shoulders. Carmean placed Vick-El against the wall and instructed him to drop his cigarette and put his hands behind his back. Vick-[E]l refused Carmean's commands. Instead, Vick-El made numerous attempts to push off the wall and turn around to face Carmean. Carmean requested backup and knocked the cigarette out of Vick-El's hand. Vick-El yelled at him several times and a struggle ensued, where Vick-El struck Carmean in the chest with his elbow. Carmean hooked his arm across Vick-El's torso, from left rib cage to his right shoulder, and took Vick-El to the ground, landing on top of him. Vick-El placed his hands underneath himself. Carmean gave Vick-El numerous orders to put his hands to the side, but Vick-El refused. Carmean radioed for backup again and struck Vick-El once on the right side of his face/head area to gain compliance. After Vick-El refused further instructions to put his hands behind his back, Carmean struck Vick-El a second time on the right side of his face/head area in a further attempt to gain compliance. After this second strike, Vick-El stopped resisting and released his hands, allowing Carmean to place him in handcuffs.

(Id. at 2 (citations omitted)).

Carmean denies using his taser on Vick-El. (Carmean Aff. ¶ 7). He states the clips that secured the taser holster to his equipment belt broke during the incident, and the holster, with the taser still in it, fell from the belt. (Id. ¶ 9).

---

[5] The bench warrant was issued for "Herschel Brown" on April 1, 2002, for failure to appear for driving with a suspended license. (ECF No. 36-3).

3

Carmean arrested Vick-El. (Id. ¶¶ 4, 11). Officer Carmean observed that Vick-El had a cut under his right eye and some swelling near his eye and radioed for an ambulance to take Vick-El to the hospital. (Id. ¶ 10). At the hospital, Vick-El was treated for facial contusions and photographed. (Id. ¶ 12; Booking Form at 1, ECF No. 15-8; Hospital Rs. at 2, ECF No. 38-1; Pl. Photographs at 1–2, ECF No. 38-2). At the hospital, Carmean searched Vick-El and found cocaine and heroin in his possession. (Carmean Aff. ¶ 11; Aug. 29 Rep. at 3; Prob. Cause Stmt. at 2). Carmean also found identification that confirmed Vick-El's identity, as well as one of the four dates of birth associated with the name Herschel Brown and a social security card that matched one of the three social security numbers associated with the name Herschel Brown. (Id.).

Vick-El subsequently was charged with (1) second-degree assault; (2) possession of a controlled dangerous substance – heroin; (3) possession of a controlled dangerous substance – cocaine; (4) resisting arrest; and (5) making a false statement. (Carmean Aff. ¶ 13; Statement of Charges ["Charges"] at 1–2, ECF No. 36-9). In 2015, a jury acquitted Vick-El on the second-degree assault charge, found him guilty of both possession charges and resisting arrest, and the false statement charge was dismissed nolle prosequi. (Cir. Ct. Md. Rs. ["Cir. Ct. Rs."] at 4–7, ECF No. 36-10). In 2018, after an appellate court reversed his state convictions and remanded his case for further proceedings, Vick-El pleaded guilty to the two counts of drug possession. (Id. at 4–5). The resisting arrest charge was placed on the stet docket. (Id. at 5).

B. **Procedural Background**

On November 2, 2015, Vick-El filed this lawsuit under 42 U.S.C. § 1983 alleging that he was subjected to excessive force, police brutality, and negligence during his August 29, 2014 arrest. (ECF No. 1). Vick-El seeks declaratory and injunctive relief, along with compensatory and punitive damages of $5.2 million. (Id.).

On March 16, 2017, the Court granted summary judgment in favor of Defendants (ECF No. 21). The Court found that the excessive force claim against Officer Carmean was barred under Heck v. Humphrey, 512 U.S. 477 (1994), because Vick-El had been convicted of resisting arrest during the incident. (Mem. Op. at 6–7). The Court also found that Vick-El failed to establish Downing had engaged in conduct related to the alleged excessive force or was otherwise liable for the purported conduct of his subordinate Carmean. (Id. at 5–6).

The United States Court of Appeals for the Fourth Circuit reversed and remanded the decision on appeal, explaining that Vick-El's state conviction for resisting arrest had been vacated and placed on the stet docket.[6] (See Sept. 11, 2018 Op. at 2, ECF No. 25).

On January 14, 2019, consistent with the Fourth Circuit's decision, this Court stayed the case pending resolution of the state criminal proceedings. (ECF No. 28). The State's Attorney for Worcester County did not ask to restore the charge to the criminal

---

[6] When charges are placed on the stet docket, the accused remains liable under the same charging document. State v. Meade, 647 A.2d 830, 839 (Md.Ct.Spec.App. 1994) ("[T]he entry of a 'stet' is merely a determination that the State will not proceed against the accused on that indictment or information at that time."). A stetted charge may be rescheduled for trial at the request of either party within one year and thereafter only by order of the court for good cause shown. Md. Rule 4-248(a).

5

docket. (See ECF Nos. 29, 31, 32). On April 7, 2020, the Court lifted the stay and ordered Vick-El to amend his excessive force claim by May 29, 2020, or inform the Court whether he wanted to pursue the claim as filed in the original Complaint. (ECF No. 33). On June 1, 2020, Vick-El submitted an untitled filing generally arguing he was subjected to excessive force. (ECF No. 34). Vick-El did not, however, submit an amended complaint or other relevant filing during or proximate to this time period. Accordingly, the original Complaint continues to serve as the operative complaint.

On November 11, 2020, Defendants filed a renewed Motion to Dismiss for Failure to State a Claim, or, Alternatively, for Summary Judgment. (ECF No. 36). Defendants also filed a Motion for an Extension of Time to file the dispositive motion (ECF No. 35), which the Court will grant nunc pro tunc. Vick-El filed an Opposition on December 11, 2020. (ECF No. 38). On December 28, 2020, Defendants filed a Reply. (ECF No. 39).

## II. DISCUSSION

### A. Standard of Review

#### 1. Conversion

Defendants style their Motion as a motion to dismiss under Rule 12(b)(6) or, alternatively, for summary judgment under Rule 56. "A motion styled in this manner implicates the Court's discretion under Rule 12(d)[.]" Pevia v. Hogan, 443 F.Supp.3d 612, 625 (D.Md. 2020) (citation omitted). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court

has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and "a reasonable opportunity for discovery." Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013) (citation omitted). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005) (citing Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998)). The Court "does not have an obligation to notify parties of the obvious." Laughlin, 149 F.3d at 261.

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011) (citation omitted). Yet "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th

Cir. 1996)). To successfully raise the need for additional discovery, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor & City Council of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011) (citation omitted). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 954 (4th Cir. 1995)).

The Fourth Circuit has warned that it "'place[s] great weight on the Rule 56[d] affidavit' and that 'a reference to Rule 56[d] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56[d] affidavit.'" Harrods, 302 F.3d at 244 (quoting Evans, 80 F.3d at 961). Failing to file a Rule 56(d) affidavit "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Id. (quoting Evans, 80 F.3d at 961). Despite these holdings, the Fourth Circuit has indicated that there are some limited circumstances in which summary judgment may be premature, notwithstanding the non-movants' failure to file a Rule 56(d) affidavit. See Id. A court may excuse the failure to file a Rule 56(d) affidavit when "fact-intensive issues, such as intent, are involved" and the nonmovant's objections to deciding summary judgment without discovery "serve[ ] as the functional

equivalent of an affidavit." Id. at 244–45 (quoting First Chi. Int'l v. United Exch. Co., 836 F.2d 1375, 1380 (D.C.Cir. 1988)).

Here, the Court concludes that both requirements for conversion are satisfied. Vick-El was on notice that the Court might resolve Defendants' Motion under Rule 56 because Defendants styled their Motion in the alternative for summary judgment and presented extra-pleading material for the Court's consideration. See Moret, 381 F.Supp.2d at 464. In addition, the Clerk informed Vick-El about the Motion and the need to file an opposition. (See Rule 12/56 Letter, ECF No. 37). Vick-El filed an Opposition but did not include a request for additional discovery. (See ECF No. 38).[7] Thus, because the Court will consider documents outside of Vick-El's Complaint in resolving Defendants' Motion, the Court will treat the Motion as one for summary judgment.

### 2. Summary Judgment

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)).

---

[7] In an untitled document filed months before Defendants' Motion, Vick-El sought the production of documents relating to an unnamed Defendant's disciplinary records. (Untitled Filing at 3, ECF No. 34). The document does not, however, explain the "specified reasons" why Vick-El "cannot present facts essential to justify [his] opposition." Fed.R.Civ.P. 56(d). Instead, Vick-El simply demands "discovery for the sake of discovery." Hamilton, 807 F.Supp.2d at 342 (citation omitted). Accordingly, even if the Court construed this premature filing as Vick-El's Rule 56(d) affidavit, it does not provide sufficient grounds to dissuade the Court from considering Defendants' Motion as one for summary judgment.

Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing that there is a genuine dispute of material fact. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co., LLC v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citations omitted). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis v. Caldera, 249 F.3d 259,

265 (4th Cir. 2001). A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of his case where he has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**B.   Analysis**

    **1.   Chief Downing**

Aside from naming Downing in the caption, the Complaint makes no mention of Downing. (See ECF No. 1). Indeed, neither the Complaint nor any of Vick-El's subsequent submissions contain allegations regarding Downing's personal involvement in any conduct related to the incident, much less sufficient allegations to create a genuine dispute of material fact regarding his involvement. (See ECF Nos. 1, 19, 34).

Vick-El also raises the possibility of a supervisory liability claim against Downing on the basis of his allegation that Downing knew Carmean had a history of using excessive force. (See Mem. Opp'n Defs.' Mot Dismiss Alt. Summ. J. at 5, ECF No. 19). However, Vick-El's bald allegation concerning Downing's alleged foreknowledge of Carmean's use of excessive force is insufficient to state a supervisory liability claim for the reasons stated in the Court's March 16, 2017 Memorandum Opinion. (See Mem. Op. at 5–6).[8]

---

    [8] With his Opposition to this Motion, Vick-El encloses a copy of a November 20, 2017, application for a statement of charges against Carmean for allegedly assaulting his

Accordingly, Vick-El has failed to state a claim upon which relief may be granted against Downing. Accordingly, Vick-El's claims against Downing will be dismissed.

### 2. Officer Carmean

In response to Vick-El's claim that Carmean used excessive force to arrest him, Carmean argues he is entitled to qualified immunity and that summary judgment is therefore appropriate.

"Qualified immunity shields police officers who commit constitutional violations from liability when, based on 'clearly established law,' they 'could reasonably believe that their actions were lawful.'" Estate of Jones v. City of Martinsburg, 961 F.3d 661, 667 (4th Cir. 2020) (quoting Booker v. S.C. Dep't of Corr., 855 F.3d 533, 537–38 (4th Cir. 2017)). Qualified immunity analysis requires courts to conduct a two-step inquiry, asking, in either order: "(1) whether a constitutional violation occurred; and (2) whether the right was clearly established at the time of the violation[.]" Id. When determining whether a right is clearly established, "a court does not need to find 'a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" Crouse v. Town of Moncks Corner, 848 F.3d 576, 583 (4th Cir. 2017) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)). "The burden of establishing a qualified immunity defense rests on the official asserting the defense." Wingate v. Fulford, 987 F.3d 299, 302 (4th Cir. 2021), as amended (Feb. 5, 2021) (citing Meyers v.

---

wife, Rachel Carmean. (See ECF No. 38-3). The application and alleged assault are dated long after the August 2014 incident forming the basis for this lawsuit occurred, however, and therefore provide no insight into Downing's knowledge of Carmean's propensity to use excessive force in 2014.

Baltimore Cnty., 713 F.3d 723, 731 (4th Cir. 2013)). Defendants argue that no constitutional violation occurred and, even if a constitutional violation did occur, the law was not clearly established at the time of the violation.

The Fourth Amendment prohibits officers from using excessive force in making an arrest. See Graham v. Connor, 490 U.S. 386, 387 (1989); Betton v. Belue, 942 F.3d 184, 191 (4th Cir. 2019); E.W. by and through T.W. v. Dolgos, 884 F.3d 172, 179 (4th Cir. 2018); Jones v. Buchanan, 325 F.3d 520, 527–28 (4th Cir. 2003). A court analyzes whether the amount of force used was reasonable by assessing the totality of the circumstances, including "the severity of the underlying offense," "whether the suspect poses an immediate threat to the safety of the officer or others," and "whether the suspect is actively resisting arrest or attempting to evade arrest by flight." E.W., 884 F.3d at 180–82.

> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . . The calculus of reasonableness must embody allowance for the fact that police officers are often required to make split second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

Graham, 490 U.S. at 396–97.

Defendants argue that Carmean's use of force was reasonable. Defendants note initially that the warrant gave Carmean the right to arrest Vick-El. Defendants further argue that Carmean's use of force was reasonable because Vick-El refused his commands and initially posed a threat due to the burning cigarette in his hand. According to Defendants,

Vick-El's refusal to comply with Carmean's lawful commands resulted in him applying the force necessary to effectuate the arrest.

Vick-El, however, alleges that he did not resist arrest—rather, Vick-El contends that after a brief verbal exchange, Carmean "push[ed] [him] up against the wall," "threw [him] to the ground," "taze[d]" him, "put his knee in [Vick-El's] back," and "started to punch [him] in [his] right eye." (Compl. at 2). A reasonable jury could conclude that that if Vick-El's version of events is accurate, Carmean's use of force was not reasonable.[9] See, e.g., Vanderhurst v. Mohardt, No. PWG-13-2143, 2015 WL 3874551, at *2 (D.Md. June 22, 2015) ("[A] genuine dispute exists as to the reasonableness of the use of force, as Plaintiff testified that he did not resist arrest, making any force unnecessary[.]"); Taylor v. Prince George's Cnty., Md., No. DKC 13-1678, 2014 WL 2964093, at *6 (D.Md. June 30, 2014) (denying motion for summary judgment as to excessive force claim on the basis of plaintiff's allegations that he did not resist arrest); see also Saucier v. Katz, 533 U.S. 194, 201 (2001) (when determining whether defendants are entitled to qualified immunity, a court must consider the facts "in the light most favorable to the party asserting the injury"). Accordingly, a genuine dispute of material fact exists as to whether Vick-El resisted arrest and, relatedly, whether the force applied was reasonable.

---

[9] In considering a summary judgment motion, the Court may not make credibility determinations. Wilson v. Prince George's Cnty., 893 F.3d 213, 218–19 (4th Cir. 2018). Further, when presented with conflicting evidence, such as competing affidavits, as is the case here, summary judgment is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. See Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002).

For the reasons stated above, summary judgment will be denied as to Vick-El's excessive force claim against Carmean. Vick-El will be granted twenty-eight days to file a motion for appointment of counsel to assist him in discovery and to represent him in presenting his claims.

### III.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss for Failure to State a Claim, or, Alternatively, for Summary Judgment (ECF No. 36) will be granted as to Chief Downing and denied as to the claims against Officer Carmean. A separate Order follows.

Entered this 30th day of June, 2021.

/s/
George L. Russell, III
United States District Judge